KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RICARDO AVALOS-RAMIREZ,<br><br>　　　　Defendant. | Criminal Case No. 08cr0783-DMS<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>Date:　May 16, 2008<br>Time:　1:00 A.m.<br>Court:　The Hon. Dana M. Sabraw |

　　　COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motion for Discovery. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts and Memorandum of Points and Authorities.

//

//

//

//

//

**I**

**STATEMENT OF FACTS**

**A.     Defendant's Apprehension**

On February 18, 2008, at approximately 7:30 a.m., a gray Buick Regal approached the I-8 westbound checkpoint with two visible occupants. The driver of the Buick, later identified as Ricardo Avalos-Ramierez ("Defendant"), ignored the checkpoint sign and drove through the primary inspection zone. Border Patrol Agent Joshua Jamelka yelled for Defendant to stop after he drove past the posted sign. Defendant complied with the order, stopping the vehicle approximately 10 feet beyond the posted stop sign. Defendant appeared extremely nervous, staring straight ahead in the vehicle. Agent Jemelka referred him to the secondary inspection area.

In the secondary inspection area, Border Patrol Agent Luis Gutierrez asked Defendant and his female passenger their citizenship and immigration status. Both individuals admitted to being citizens of Mexico with no legal right to enter or remain in the United States. Agent Gutierrez noticed that the back seat of the vehicle was removed and a blanket was draped across the interior of the car. He asked Defendant for permission to search the vehicle, and Defendant gave his consent.

Agent Gutierrez inspected the vehicle and observed one female lying on the floor in front of the passenger seat and two more females concealed under the blanket. He found four additional individuals, all males, concealed in the trunk. All seven admitted to being citizens and nationals of Mexico with no legal right to be in the United States. Defendant and the eight passengers were transported to the Campo Border Patrol Station for processing.

**B.     Defendant's Post-Miranda Confession**

On February 19, 2008, at approximately 12:30 a.m., Defendant waived his Miranda rights and agreed to be interviewed by Agent Gutierrez. Defendant stated that he was born in Tecoman, Colima, Mexico on October 18, 1969. Defendant stated that he is a citizen and national of Mexico with no documents allowing him to legally remain in the United States. He admitted to being previously deported, and admitted that he was previously convicted in 1994 of transporting undocumented aliens. He said he had entered the United States illegally on February 17, 2008, at approximately 9:00 p.m. near the Tecate, California Port of Entry for the purpose of smuggling undocumented aliens to the United

States. He said he was going to be paid $500 to transport the aliens to a Budget Inn in Imperial, California and an additional $100 per person to transport them to San Diego, California.

**C.     Material Witness Statements**

Armida Perez-Villanueva, Yaritza Gutierrez-Sotelo, and Ricarda Cruz-Jimenez all provided statements to Border Patrol. All three indicated that they are citizens and nationals of Mexico with no legal right to be in the United States. The witnesses stated that they were paying between $500 and $2,500 to be smuggled into the United States. All three indicated that they crossed into the United States from Mexico on foot and walked for a distance before being picked up in a vehicle. All three identified Defendant as the driver of the vehicle. Gutierrez-Sotelo and Cruz-Jimenez stated that Defendant yelled at them not to look at him. They also said he was driving very aggressively and they feared for their lives.

**D.     Defendant's Criminal and Immigration History**

Defendant was convicted on July 20, 1994, in the Federal District Court in the Central District of California for Transportation of Aliens and Conspiracy in violation of Title 8, United States Code Section 1324(a)(1)(B) and Title 18, United States Code, Section 371, for which he received a sentence of eight months imprisonment and three years supervised release. On June 5, 2000, Defendant's supervised release was revoked and he was sentenced to an additional nine months in custody.

Defendant appeared before an Immigration Judge for a deportation hearing on June 19, 1997, and was physically removed from the United States to Mexico the same day. Defendant was most recently physically removed to Mexico on January 31, 2008. Defendant has been removed from the United States on nine separate occasions.

**II**

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

On March 3, 2008, the Government produced 132 pages of discovery, which included the reports from the Border Patrol Agents, summaries of the statements made by Defendant and the material witnesses, documentation regarding Defendant's criminal history, and a DVD of Defendant's post-arrest statement. The Government will provide counsel with the audiotape from Defendant's hearing before an Immigration Judge as soon as the tape is received and a duplicate has been made.

The assigned AUSA will also personally review Defendant's A-file and will produce all documents contained in Defendant's A-file that are responsive to Defendant's requests.

**(1)    Immigration File and Related Documents**

Defendant requests that the United States provide him with a copy of his Alien Registration File ("A-File"). [Def's Mem. at 2.] The United States objects to this request. This information is equally available to Defendant through a Freedom of Information Act request. Even if Defendant could not obtain the A-File through such a request, the A-File itself is not discoverable under Rule 16, Brady or any other constitutional or statutory provision. The United States will disclose A-file documents it intends to use in its case-in-chief. The United States will also disclose A-file documents that constitute Brady material and A-file documents that fall under Rule 16.

Although the United States will disclose relevant A-file *documents*, the A-file itself need not be disclosed. The A-File contains information that is not discoverable like internal government documents and witness statements. *See* Fed. R. Crim. P. 16(a)(2). Witness statements would not be subject to production until after the witness for the United States testifies and provided that a proper motion is made by Defendant. *See* Fed. R. Crim. P. 16(a)(2) and 26.2. Defendant does not own the A-File, rather, it is an agency record. *Cf.* United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records). Of course, should the Court order inspection of relevant documents from the A-File, the United States will facilitate the inspection as it does in other cases.

**(2)    Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has provided all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

//

//

**(3)     Arrest Reports, Notes, and Dispatch Tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case. The Government is in the process of determining whether there are any additional reports related to the remote video surveillance and whether there are any dispatch tapes. If such reports or tapes are identified, the Government will produce them to Defendant. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A) and (B).

The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, as explained above, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(4)     Defendant's Prior Record**

The Government has already provided Defendant with documentation regarding his prior criminal record, including his record. The Government has received and will produce to Defendant in advance of the hearing the additional judgment and conviction documents in the possession of the Assistant U.S. Attorney, thereby fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

//

//

**(5) & (6)    Evidence Seized & Tangible Objects**

The only seized evidence known to the Government is the vehicle Defendant was driving. The Government will request that the seizing agency maintain the vehicle and will continue to comply with Rule 16(a)(1)(E)[1/] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(7)    Request for Preservation of Evidence**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government has made every effort to preserve evidence it deems to be relevant and material to this case, including sending a letter to the A-file custodian to review and preserve such evidence. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(8)    Reports of Examinations or Tests**

At this time, the Government is not aware of any scientific tests or examinations performed in connection with this case. Prior to trial, a fingerprint analysis may be conducted. If such evidence is generated, the results of any scientific tests or examinations will be provided to Defendant in accordance

---

[1/]    Defendant requests production of evidence pursuant to Rule 16(a)(1)(C). Because Rule 16(a)(1)(C) applies to organizational defendants, it is inapplicable in this case. The Government construes this as a request under rule 16(a)(1)(E).

with Rule 16(a)(1)(F)[2/] when those tests results are received.

**(9)   Expert Witnesses**

The Government recognizes its obligation under Rule 16(a)(1)(G)[3/] to provide a defendant with a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief. At this time, no such report exists. If and when such a report is generated, the Government will comply with its obligations to produce the discovery to the Defendant.

**(10)   Brady Material**

The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

---

[2/]   Defendant requests the results of any examinations or tests under Rule 16(a)(1)(D). Because Rule 16(a)(1)(D) relates to a defendant's prior record, the Government interprets this as a request pursuant to Rule 16(a)(1)(F).

[3/]   Defendant requests discovery regarding an expert witness under Rule 16(a)(1)(E). Because Rule 16(a)(1)(E) relates to documents and objects, the Government interprets this as a request pursuant to Rule 16(a)(1)(G).

defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).   Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(11)   Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).   The Government is not aware of any Giglio information related to this case.  If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(12)   Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).   If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).   There is no applicable Jencks material at this time.  If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(13)** **FRE 404(b)**

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

### III

### DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

### IV

### CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed.

DATED: May 14, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/*Rebecca Kanter*
REBECCA S. KANTER
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0783-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| RICARDO AVALOS-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Mark Chambers

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2008.

                                      /s/ ***Rebecca Kanter***
                                      REBECCA S. KANTER